**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

|  |  |  |
|---|---|---|
| MARIO R. SULLIVAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Case No. 1:24-cv-157-LAG-ALS |
| TIMOTHY WARD, *et al.*,[1] | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER AND RECOMMENDATION

Plaintiff Mario R. Sullivan, a prisoner confined at Wilcox State Prison located in Abbeville, Georgia, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis* ("IFP"). (Docs. 1, 2). On October 29, 2024, this civil action was dismissed as duplicative of another complaint filed by Plaintiff. (Doc. 6). Thereafter, Plaintiff filed a motion for reconsideration. (Doc. 8). On September, 19, 2025, the Court granted Plaintiff's motion for reconsideration and ordered Plaintiff to provide an account statement in support of his motion to proceed IFP. (Doc. 14). Plaintiff was also ordered to recast his complaint and provided with instructions on how to do so. *Id*. On October 28, 2025, Plaintiff filed another motion to proceed IFP (Doc. 18) and a recast complaint (Doc. 17). Plaintiff's recast complaint (Doc. 17) is now the operative complaint in this civil action.[2]

---

1 In his recast complaint, Plaintiff removed Austin Stuckey and Warden Charles Mims as Defendants. (Doc. 17 at 1, 4-5). The Clerk of Court is **DIRECTED** to terminate Austin Stuckey and Warden Charles Mims as Defendants to this civil action.

2 See *Schreane v. Middlebrooks,* 522 F. App'x 845, 847 (11th Cir. 2013)(quoting *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2s 1365, 1370 n.6 (11th Cir. 1982)("As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading.") "Once the district court accepts the amended pleading, 'the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against

For the reasons stated below, Plaintiff's motions to proceed IFP (Docs. 2, 18) are **GRANTED** but it is **RECOMMENDED** that Plaintiff's recast complaint (Doc. 17) be **DISMISSED** for failure to state a claim for which relief may be granted.

**MOTION FOR LEAVE TO PROCEED IFP**

Plaintiff seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a). *Id*. Plaintiff is unable to pay the cost of commencing this action and therefore the application to proceed IFP is **GRANTED**.

However, even if a prisoner is allowed to proceed IFP, one must nevertheless pay the full amount of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has sufficient assets, then the prisoner must pay the filing fee in a lump sum. If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because one has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4). In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. (*See* Doc. 18 at 4; Doc. 18-1). Accordingly, it is **ORDERED** that the complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

I.      Directions to Plaintiff's Custodian

Plaintiff is required to make monthly payments of twenty percent (20%) of the deposits made to his prisoner account during the preceding month toward the full filing fee. The Clerk of Court is **DIRECTED** to send a copy of this Order to the business

---

his adversary.'" *Schreane*, 522 F. App'x at 847 (quoting *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007).

manager of the facility in which Plaintiff is incarcerated. It is **ORDERED** that the warden of the institution in which Plaintiff is incarcerated, or the sheriff of any county in which he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is authorized to forward payments from the prisoner's account to the clerk each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

II.     Plaintiff's Obligations Upon Release

Plaintiff should keep in mind that his release from incarceration/detention does not release him from his obligation to pay the installments incurred while he was in custody. Plaintiff remains obligated to pay those installments justified by the income in his prisoner trust account while he was detained. If Plaintiff fails to remit such payments, the Court authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law. Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

**PRELIMINARY SCREENING OF PLAINTIFF'S COMPLAINT**

**I.     Standard of Review**

The PLRA directs courts to conduct a preliminary screening of every complaint

filed by a prisoner who seeks redress from a government entity, official, or employee. 28 U.S.C. § 1915A(a). Courts must also screen complaints filed by a plaintiff proceeding IFP. 28 U.S.C. § 1915(e). Both statutes apply in this case, and the standard of review is the same. "*Pro se* filings are generally held to a less stringent standard than those drafted by attorneys and are liberally construed." *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020) (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted). On preliminary review, the Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (citations omitted). A claim can be dismissed as malicious if it is knowingly duplicative or otherwise amounts to an abuse of the judicial process. *Daker v. Ward*, 999 F.3d 1300, 1308, 1310 (11th Cir. 2021) (affirming dismissal of duplicative complaint "in light of [prisoner's] history as a prolific serial filer").

A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See, e.g.*, *Bingham v. Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (affirming dismissal of certain claims at preliminary screening because prisoner failed to allege sufficient facts to show a violation of his rights), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc).

## II.    Plaintiff's Allegations

Plaintiff's claims arise from his previous incarceration at Autry State Prison. (Doc. 17, at 6). Plaintiff states that, on October 21, 2022, he learned from "WALB NEWS 10" that the Georgia Department of Corrections ("GDC") and the Georgia Department of Health ("GDPH") publicly announced that an individual at Autry State Prison tested positive for Legionnaires' disease in June 2021. *Id.* at 6, 10. Plaintiff also alleges that, in July 2018, a different inmate at Autry State Prison was hospitalized for Legionnaires' disease and liver damage. *Id.* at 7. However, the inmate did not learn the cause of his illness until 2022, when he obtained his medical records. *Id.* at 6-7. Plaintiff asserts that on unspecified dates he "documented many symptoms with medical" including gastrointestinal issues, upper respiratory, asthma, and "problems urinating which he developed a hernia due to straining to urinate". *Id.* at 6. After Plaintiff learned "that the

symptoms of Legionnaires disease included many of his symptoms[,] he immediately put in a sick call on October 22, 2022 to be tested." *Id*. Plaintiff states that his request to be tested for Legionnaires disease was denied "per Dr. Mark Woods". *Id*.

Plaintiff also complains that Defendant Warden Darrin Myers "denied any water contamination existed regardless of GDC and GDPH public confirmation" and "set out a campaign of harassment against Plaintiff" after Plaintiff "authored and submitted a 'Petition for Bottled Water and Medical Testing' via an advocate for the incarcerated". *Id*. at 10-11. Plaintiff states that on April 18, 2023, "Myers began to harass and antagonize [Plaintiff] in regard[] to his beard", which Plaintiff claims he could not shave "due to his religious beliefs". *Id*. at 12. Plaintiff alleges that Defendant Myers then told Plaintiff that he was his God while Plaintiff was a prisoner at Autry State Prison, and he ordered a correction officer to take Plaintiff to have his entire face shaved. *Id*. Plaintiff states he was also placed "in the hole" for 42 days and, during that time, Defendant Myers told Plaintiff that "he was being sent to another prison where he would be killed". *Id*. at 12-13.

Plaintiff raises claims of deliberate indifference to a serious medical need under the Eighth Amendment due to the alleged water contamination and claims of retaliation for shaving Plaintiff's beard and "violating Plaintiff's right to bodily integrity". *Id*. at 7, 9, 11. Plaintiff seeks declaratory and injunctive relief as well as damages and costs. *Id*. at 14.

## III.   Plaintiff's Claims

*Dismissal pursuant to § 1915A for failure to state a claim*

### A.  Claims against Defendant Warden Darrin Myers

Plaintiff has identified Defendant "Warden Darrin Myers, Deceased" as a defendant in this lawsuit. (Doc. 17, at 4); (Doc. 1-1, at 4). "[A] dead person cannot be a party to legal proceedings, and the representative of an estate cannot be substituted for a

deceased defendant under the federal rules if the defendant predeceased the filing of the action." *Talley v. Cty. of LaGrange, Ga.*, 2023 WL 8114369, at *4 (M.D. Ga. Nov. 23, 2023) (citations omitted). Because Defendant Myers was deceased at the time Plaintiff initiated this civil action, it is **RECOMMENDED** that Plaintiff's claims against Defendant Myers be **DISMISSED**.

B. <u>Claims Against Defendants Ward, Oliver, Barry, Osbourne, Holt, Ammons, Toomey, Lewis, and Truszczynski</u>

Plaintiff also names as Defendants the "Former Commissioner of GDC, Timothy C. Ward; Former Commissioner of GDC, Tyrone Oliver; the Warden of Central State Prison, Walter Barry; the Deputy Warden of Care & Treatment at Autry State Prison, Sharon Osbourne; the GDC Assistant Commissioner of Facilities, Ahmed Holt; GDC General Counsel, Jennifer Ammons; Commissioner, GDPH, Dr. Kathleen E. Toomey; Statewide Medical Director, Dr. Sharon Lewis; Georgia Environmental Protection, Anna Truszczynski". (Doc. 17, at 1, 4-5). Plaintiff suggests that some "and/or" all of these supervisors and state officials were personally notified in 2018 that an inmate at Autry State Prison had been treated for legionnaire's disease. *Id.* at 7-9. He goes on further to state that "it should be presumed that all the above stated defendants in this claim were also notified" of the contamination when the news report aired on WALB. *Id.* at 10.

First, it appears that Plaintiff seeks to hold Defendants Ward, Oliver, Barry, Osbourne, Holt, Ammons, Toomey, Lewis, and Truszczynski liable on a theory of vicarious liability or respondent superior based solely upon their supervisory roles and employment in state government. "It is well established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). Instead, to establish liability against a supervisor, a plaintiff must allege facts showing either that a supervisor personally

7

participated in the alleged constitutional violation or that there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation. *Id.* at 762; *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). Plaintiff fails to allege facts that any of these Defendants had direct or indirect involvement with any alleged violation of Plaintiff's constitutional rights.

Other than Plaintiff's own inferences and conjecture that they should have had such knowledge because of the news report or their position, Plaintiff gives no factual basis for his claims that Defendants Ward, Oliver, Barry, Osbourne, Holt, Ammons, Toomey, Lewis, and Truszczynski had knowledge about the events giving rise to Plaintiff's claims. *See Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (stating that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal"). Plaintiff's claims against Defendants Ward, Oliver, Barry, Osbourne, Holt, Ammons, Toomey, Lewis, and Truszczynski fail because he does not allege specific facts connecting them to any constitutional violation, relying instead on speculation based on their job titles. *See, e.g., Asad v. Crosby*, 158 F. App'x 166, 171-72 (11th Cir. 2005) (affirming district court's dismissal of supervisory liability claims against two defendants because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation.").

To the extent Plaintiff alleges that these defendants conspired with Autry State Prison medical providers Dr. Woods and Dr. Bradford, along with Warden Myers, to violate Plaintiff's constitutional rights, such a claim lacks factual support. (*See* Doc. 17, at 8-10). "Conspiring to violate another person's constitutional rights violates section 1983."

*Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002) (citations omitted). However, when a claim is rooted in allegations of a conspiracy, "[i]t is not enough to simply aver in the complaint that a conspiracy existed." *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984). "For purposes of 42 U.S.C. § 1983, the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the [Defendants]." *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992); *see also Van Bethel v. Carter*, No. 5:12–cv–01153–RDP–HGD, 2012 WL 5932682 at *2, (N.D. Ala. Oct. 12, 2012) ("Allegations of conspiracy must be specific and based upon facts rather than conclusions.").

To state a conspiracy claim under § 1983, a plaintiff must (1) show that the defendants had a "meeting of the minds" or reached an understanding to violate his rights and (2) prove an actionable wrong to support the conspiracy. *Bailey v. Bd. of Cnty. Com'rs of Alachua County, Fla.*, 956 F.2d 1112, 1122 (11th Cir.1992). The "naked assertion of a conspiracy . . . without supporting, operative facts" establishing an agreement between the defendants, and a common plan to put the agreement into effect, is insufficient to implicate § 1983 liability. *Phillips v. Mashburn,* 746 F.2d 782, 785 (11th Cir. 1984). Plaintiff's Complaint does not offer any details as to when or how an agreement was reached among these Defendants to hide the fact that an inmate had legionnaires disease in 2018 or to cover up the presence of legionella at Autry State Prison. (*See* Doc. 17, at 6-10). Plaintiff's self-serving conclusions that these Defendants were notified of the 2018 diagnosis, either by Autry State Prison personnel or by seeing a local television station's news report, is not enough to support his theory that the Defendants knew there was legionella in the prison's water supply and that they worked in concert to hide that fact. *See Grider v. Cook*, 590 F. App'x 876, 881 (11th Cir. 2014) (plaintiff failed to state a

conspiracy claim where he made only "threadbare recitals of the agreement element of conspiracy" and failed to identify "even generally" any "date, time, or location" where the agreement occurred). Because Plaintiff's conspiracy claims against these Defendants are nothing more than vague conclusory assumptions and because he fails to set forth any factual allegations as to when, where, or how all these various government officials came together to violate his constitutional rights, he has failed to state a viable conspiracy claim against these Defendants. *See Bailey*, 956 F.2d at 1122 ("[T]he linchpin for conspiracy is agreement, which presupposes communication[.]"); *Oxford Asset Mgmt. Ltd., v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted).

For the reasons set forth, it is **RECOMMENDED** that Plaintiff's claims against Defendants Ward, Oliver, Barry, Osbourne, Holt, Ammons, Toomey, Lewis, and Truszczynski be **DISMISSED without prejudice** for failure to state a claim.

C. Deliberate Indifference to Health and Safety Claim

Plaintiff's allegations generally implicate potential claims for deliberate indifference to Plaintiff's health and safety. (Doc. 17, at 7, 9). It is only "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate [that] violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

To state a claim for deliberate indifference to an inmate's safety, a prisoner must allege facts to show: (1) a substantial risk of serious harm; (2) deliberate indifference to that risk; and (3) causation. *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016); *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013).

"The first element of an Eighth Amendment claim—a substantial risk of serious

10

harm—is assessed under an objective standard." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal citation omitted). To prevail, the prisoner must show "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (quoting *Lane*, 835 F.3d at 1307). As to the first prong, a prisoner may also demonstrate that society "considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Similar to the United States Supreme Court and other district courts, this Court will assume without deciding that unsafe drinking water, including water contaminated with legionella bacteria, can pose a substantial risk of harm to a prisoner's health. *See Id.,* 509 U.S. at 33 ("We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water[.]"). Therefore, for purposes of PLRA review, Plaintiff has satisfied the objective prong of his Eighth Amendment claim.

To establish deliberate indifference, a plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'" *Wade v. McDade*, 106 F.4th 1251, 1255-56 (11th Cir. 2024) (en banc) (quoting *Farmer*, 511 U.S. at 839). The first prong—subjective awareness—requires "that the prison 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Rodriguez v. Sec'y for Dep't of Corrs.*, 508 F.3d 611, 617 (11th Cir. 2007) (quoting *Farmer*, 511 U.S. at 837). The second prong—disregard of the risk—is objective, and the facts must show that the defendant responded to the known risk in an objectively unreasonable

11

manner. *Marbury*, 936 F.3d at 1233. The third prong—subjective recklessness—is satisfied only if the plaintiff shows "that the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm." *Wade*, 106 F.4th at 1253.

Finally, to establish causation, "the plaintiff must show a 'necessary causal link' between the officer's failure to act reasonably and the plaintiff's injury." *Marbury*, 936 F.3d at 1233 (citation omitted). This inquiry focuses "on whether an official's acts or omissions were the cause—not merely a contributing factor—of the constitutionally infirm condition." *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993). "[T]he 'critical' question is whether [the defendant] was 'in a position to take steps that could have averted the [injury] . . . but, through [deliberate] indifference, failed to do so.' To determine whether [the defendant] caused [Plaintiff's] injury, [the Court] look[s] at his 'duties, discretion, and means.'" *Rodriguez*, 508 F.3d at 622 (citation omitted).

Plaintiff's allegations are that Defendants Woods and Bradford may have been "notified of water contamination as early as July 2018 via Phoebe hospital", that they are "legally responsible for the welfare of all inmates at Autry and operation of medical department", and they "had a duty to intervene and demand testing, treatment, and preventative measure be taken for inmate safety or either contact Defendants Lewis, Toomey, and/or Truszczynski on their own." (Doc. 17, at 7-8). However, Plaintiff fails to explain how Defendant Bradford, a physician's assistant at Wilcox State Prison, was personally involved in events occurring at Autry State Prison. Plaintiff also fails to state whether he had any interactions with Defendant Bradford which would serve as a basis for Plaintiff's conclusion that Defendant Bradford was deliberately indifferent. *See id.* at 7-8.

Similarly, Plaintiff's only allegation against Defendant Woods is that Plaintiff's request to be tested for legionnaires disease was denied "per Dr. Mark Woods". *Id*. at 6-7. Again, Plaintiff does not allege any facts to suggest that he had any personal interaction with Defendant Woods. *See id*. Plaintiff failed to allege facts to show that Defendant Woods or Defendant Bradford were aware of any particular risk of harm to Plaintiff and disregarded that risk. Accordingly, he has not satisfied the second prong for this claim.

"'[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual defendant must be judged separately and on the basis of what that person kn[ew].'" *Dang v. Sheriff, Seminole Cnty.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (quoting *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008)). "'[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.'" *Wade*, 106 F.4th at 1257 (alteration in original) (quoting *Farmer*, 511 U.S. at 838).

Plaintiff's vague and conclusory allegations fail to demonstrate that Defendants Woods and Bradford were " subjectively aware" that Plaintiff was "at risk of serious harm" in October 2022 or that either Defendant, through his own personal actions, "disregarded that risk". *Wade*, 106 F.4th at 1255 (quoting *Farmer*, 411 U.S. 839); *see also Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (citing *Farmer*, 511 U.S. at 837) (holding that subjective awareness requires that the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Even if Plaintiff's allegations satisfied the second prong of a deliberate indifference claim, Plaintiff has not alleged any facts to show that Defendants Bradford or Woods

13

caused Plaintiff's injuries. The final prong of a deliberate indifference to safety claims requires "that a defendant have a causal connection to the constitutional harm." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (citation omitted) (explaining that "as with any tort claim, [plaintiff] must show that the injury was caused by the defendant's wrongful conduct"). "Causation, of course, can be shown by personal participation in the constitutional violation." *Id.* at 1327.

Here, Plaintiff states that he was being seen and treated by the Autry State Prison medical department for symptoms "such as gastrointestinal, upper respiratory, . . . asthma[,] . . . and problems urinating which he developed a hernia[.]" (Doc. 17, at 6). Plaintiff concluded that these symptoms and medical conditions were consistent with legionnaire's disease after he saw a television news report about water contamination at Autry State Prison. *Id.* at 5, 10. Plaintiff does not allege that he had any personal interactions with either Defendant Woods or Bradford during his visits to the medical department at Autry State Prison. *See id.* at 4-10. Plaintiff's vague and conclusory allegations are insufficient to establish a causal link that his health issues were due to the water contamination much less establish a causal link between his symptoms and Defendants Bradford or Woods. *See Hall v. Skipper*, 808 F. App'x 958, 959 (11th Cir. 2020) (quoting *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 851 (11th Cir. 2000)) (holding that a plaintiff's "own bare and self-serving allegations" could not support a claim that prison water caused his health issues.).

In sum, this Court finds that on preliminary review, Plaintiff has satisfied the first prong of his Eighth Amendment claim that legionella in a prison water system can pose a substantial risk to health. However, Plaintiff has failed to satisfy the second and third elements of deliberate indifference and causation necessary for a deliberate indifference

to safety claim under the Eighth Amendment. Therefore, it is **RECOMMENDED** that Plaintiff's claim be **DISMISSED without prejudice** for failure to state a claim.

## IV.    Conclusion

Plaintiff's motion to proceed IFP (Doc. 18) is **GRANTED**.    For all the reasons set forth, it is **RECOMMENDED** that Plaintiff's complaint be **DISMISSED without prejudice** pursuant to § 1915A(b)(1) for failure to state a claim for which relief may be granted.

### OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Leslie Abrams Gardner, United States District Chief Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Objections to the Recommendation are limited in length to twenty (20) pages. A party seeking permission to exceed these limitations shall do so by filing a written motion no later than five (5) days in advance of the deadline for filing objections and by specifying the number of pages requested. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

**SO ORDERED**, this 27th day of April, 2026.

s/ **ALFREDA L. SHEPPARD**
UNITED STATES MAGISTRATE JUDGE

15